UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
-------------------------------------------------------------
PAULETTE GABBIDON
aka PAULETTE HIBBERT,

                 Plaintiff.

      -V-

DAVID R. WILSON, FPC ALDERSON;
JERROD R. GRIMES, FPC ALDERSON;
LIEUTENANT WORKMAN, FPC ALDERSON;
GINA HONAKER, FPC ALDERSON;
MARK S. INCH, FEDERAL BUREAU OF PRISONS; AND,
THE UNITED STATES OF AMERICA,
 DEFENDANTS.

Civil Action:  1:19-cv-00828

COMPLAINT AND DEMAND
      FOR A JURY TRIAL

## COMPLAINT

### PRELIMINARY STATEMENT

1. Plaintiff is a female formerly in the custody of the United States of America who was held at FPC Alderson in West Virginia prior to and between about August of 2015 and March 2018. On various dates between June 2016 and November 31, 2017, Plaintiff was inappropriately touched, sexually assaulted, enslaved, and trafficked for labor by Defendant Jerrod Grimes, who was a federal employee of the Federal Bureau of Prisons. When FPC Alderson officers and officials, including the Warden, became aware of, or should have been aware of the ongoing physical and sexual abuses and misconduct of the FPC Alderson employee, the FPC Alderson officers and officials failed to take necessary action to protect Ms. Gabbidon.

2. Plaintiff is only one of at least six inmates who have made similar allegations against Defendant Grimes and other officers and officials of FPC Alderson as a result of the

institution's allowance for an increasingly pervasive and brazen culture of sexual abuse that can best be described as sex trafficking within FPC Alderson.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to U.S.C. §§ 1331 & 1346 (b)(1) as this claim is brought against the United State of America under the FTCA, 28 U.S.C. 2671, et seq.

4. The treatment of prisoners held in Federal Bureau of Prisons ("BOP") facilities is governed by statute, BOP policy, and non-discretionary rules implemented pursuant to the Prison Rape Elimination Act ("PREA"). See 28 C.F.R. §§ 115.5, *et seq.,* 42 U.S.C. §§ 15601, et seq.; BOP Program Statement ("PS") 5324.12 (effective 6/4/2015).

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1402(b), as all of the events which give rise to this course of action occurred in the Southern District of West Virginia.

## JURY TRIAL DEMAND

6. Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PARTIES

### PLAINTIFF

7. The Plaintiff, Ms. Gabbison, is a forty-nine (49) year old Massachusetts resident who was charged with conspiracy to commit bank fraud and bank fraud offenses and convicted of same on April 30, 2012 pursuant to the U.S. Federal Criminal Code. Ms. Gabbison was released from the custody of the BOP and, at the time of this filing, resides at the La Salle Detention Facility in Jena, Louisiana.

8. Plaintiff is a Muslim woman who is devout and adheres to very strict rules of Islam. Pursuant to her religion, even talking about the offenses she was forced to endure at FPC Alderson has significant negative repercussions which Ms. Gabbidon must now prepare to face.

## DEFENDANTS

9. The United States of America is a sovereign entity named herein pursuant to the FTCA. Defendant the United States of America oversees the Federal Bureau of Prisons, which is responsible for the custody and care of federal inmates.

10. David R. Wilson is a Federal BOP employee. Upon information and belief, Defendant Warden Wilson is a West Virginia resident. At all relevant times, Defendant Warden Wilson was Warden of FPC Alderson. Pursuant to his duties as Warden, Defendant Warden Wilson had full administrative responsibility for the entire institution. Defendant Warden Wilson exercised overall responsibility for all aspects of FPC Alderson's compliance with PREA standards. He was also responsible for supervising, training, and disciplining correctional officers at FPC Alderson. Warden Wilson is named in both his official and individual capacities.

11. Jerrod Grimes ("Former Captain Grimes") is a convicted serial rapist. At all times relevant to this action, Former Captain Grimes was employed by the BOP as Captain of FPC Alderson, in which capacity he supervised all security and correctional functions of the prison and had authority to initiate inmate disciplinary proceedings and to influence inmate housing and work assignments. Former Captain Grimes was responsible for ensuring staff and inmate compliance with PREA at FPC Alderson.

12. On information and belief, Former Captain Grimes was, at all times relevant to this action, the staff-member responsible for monitoring potential retaliation against inmates victimized by sexual abuse or sexual harassment at FPC Alderson, pursuant to the BOP's PREA-mandated policy. Former Captain Grimes is named in both his individual and in his official capacities.

13. Lt. Workman is a correctional officer and, on information and belief, a West Virginia resident. At all relevant times, Lt. Workman was responsible for maintaining the security and safety of FPC Alderson staff and inmates and for ensuring compliance with PREA. Lt. Workman is named in both her individual and in her official capacities.

14. Officer Gina Honaker is a correctional professional and, on information and belief, a West Virginia resident. At all relevant times, Officer Honaker was responsible for maintaining the security and safety of FPC Alderson staff and inmates and for ensuring compliance with PREA. Officer Honaker is named in both her individual and in her official capacities.

15. Defendant Mark S. Inch was, at all times relevant to this action, the Director of the Federal Bureau of Prisons (BOP), headquartered in Washington, D.C. As Director of the BOP, Mr. Inch was responsible for the management, oversight, and supervision of all of the institutions within the BOP system, including FPC Alderson. Mr. Inch was responsible for ensuring that BOP policies and procedures – including those mandated by PREA - were followed correctly in order to ensure institutional security and safety of inmates and staff. Mr. Inch is sued in his official capacity.

## **GENERAL ALLEGATIONS**

### PLAINTIFF'S EXPERIENCES AT THE FPC ALDERSON

16. On or about August of 2015 Ms. Gabbidon entered into FPC Alderson to serve a 90-month custodial sentence for Conspiracy to Commit Bank Fraud/ Bank Fraud.

17. While she was is the possession of FPC Alderson, Ms. Gabbidon was repeatedly physically assaulted and raped by Former Captain Grimes leading to a slew of physical, emotional, and psychological damages.

18. Sometime around May/June of 2016, Ms. Gabbidon, who had been on Kitchen Duty, issued a request to be added to the carpentry detail at the expiration of her Kitchen Duty.

19. Despite her being accepted to the carpentry detail, Former Captain Grimes informed Ms. Gabbidon that he was going to have her assigned to his work detail.

20. Having had little contact with Former Officer Grimes prior to this encounter, Ms. Gabbidon declined the invitation to be place on Former Captain Grimes' work detail to which he aggressively respondent that she had no choice and that he had already put the paperwork in to switch her assignments.

21. Once Ms. Gabbidon was assigned to Former Captain Grimes' work detail, he began to make inappropriate comments to her which quickly progressed to inappropriate and unwanted touching.

22. Former Officer Grimes began misrepresenting his religious connection to Ms. Gabbidon by falsely alleging that he was Muslim. When he finally put an end to this charade, Former Officer Grimes started sending photos to Ms. Gabbidon with his likeness photoshopped into different Islamic scenes and poses. His behavior was such that it was cleat to Ms. Gabbidon that her religious beliefs and practices played a major role in his decision to victimize her.

23. On one occasion, an inmate unknown to Ms. Gabbidon approached Ms. Gabbidon to question whether she was ok because the unknown inmate had heard from yet another unknown inmate that the second unknown inmate had seen Ms. Gabbidon become very uncomfortable when Former Officer Grimes began touching her inappropriately in the presence of other inmates.

24. As part of their work detail, Ms. Gabbion and some of the other inmates were taken to the Officers' off-site training center where the Warden's, Assistant Warden's, and Captain's houses were also located. On occasion, Former Captain Grimes would pick Ms. Gabbidon and certain other ladies up from the off-site training center and take them to the houses to clean as part of their work detail.

25. However, on other occasions, Ms. Gabbidon and some of the other ladies were taken to the houses after their work detail was over and forced to clean the houses without any compensation.

26. On one such occasion in June of 2016, while the ladies were cleaning the Warden Home after their work detail, Former Captain Grimes escorted Ms. Gabbidon into the master bedroom and forcefully raped her in both the room and then the bathroom.

27. On at least three other occasions, Former Captain Grimes forced Ms. Gabbidon to clean the Assistant Warden Home, the Captain Home, and the Officer Training Center without any compensation and then proceed to rape her in the homes and center.

28. In fact, between June 2016 and November 30, 2017, Former Captain Grimes systematically and violently raped Ms. Gabbidon on a weekly basis, and sometimes more than once a week.

29. As time went by, Former Captain Grimes grew bolder in his violations against Ms. Gabbidon such that he would summon her telling the officers things like, "go tell Gabbidon to come out here," at any time of day no matter what she was doing.

30. Former Captain Grimes had become to blatant with his antics that even other inmates began to question Ms. Gabbidon about the nature of their relationship.

31. Ms. Gabbidon grew to realize that, if Former Captain Grimes' secretary was absent from work, she was sure to be summoned and raped.

32. Ms. Gabbidon also quickly learned that, when the Officers woke her up at 4:00 or 5:00 in the morning, it would be because Former Officer Grimes has summoned her for the purposed of raping her.

33. Former Captain Grimes was so brutal in his raping of Ms. Gabbidon, on at least one occasion, Ms. Gabbidon was left sitting by his office after he raped her with her clothes completely covered in her blood.

34. During her time at FPC Alderson, Ms. Gabbidon worked as a Suicide Companion to those women who were placed on suicide watch.

35. As part of her duties as a Suicide Companion, Ms. Gabbidon was required to remain with the suicidal inmate through the night to provide comfort and encouraging words.

36. On multiple occasions, between June 1, 2016, and November 31, 2017, Former Officer Grimes had Ms. Gabbidon assigned to as the Suicide Companion for the suicidal inmates in order to allow him access to her in the early hours of the morning.

37. On one such occasion, Ms. Gabbidon had been assigned as the Suicide Companion to a dear friend of hers. At 2:00 am, Former Captain Grimes arrived and ordered Ms. Gabbidon to leave with him. When Ms. Gabbidon protested that she needed to stay with the friend,

Former Captain Grimes replied, "I don't give a F***" and raped her in the bathroom. Ms. Gabbidon's friend ended up having to console Ms. Gabbidon for the rest of the night.

38. As times passed, it became evident to Ms. Gabbidon that the officers and staff of FPC Alderson at least suspected that Captain Grimes was engaging in inappropriate actions with Ms. Gabbidon but were not willing to say or do anything about it.

    a. On one occasion, Officer Aldridge was made to summons Ms. Gabbidon at about 4:30 am for Former Captain Grimes. While being escorted to his office. Ms. Gabbidon plead with Officer Aldridge explaining that she had just gotten been released from her Suicide Companion shift and needed sleep. Officer Aldridge looked at Ms. Gabbidon knowingly and would respond with statements such as "I know, but the Captain needs you", or "He is the Captain, there is nothing I can do, he summoned you", or "The Captain wants you to come to his office".

    b. On several occasions after having been raped by Former Captain Grimes, Ms. Gabbidon would sit in the vicinity of the office and cry. Several times, Ms. Gabbidon saw that the Former Captain Grimes' secretary could see Ms. Gabbidon crying but the secretary refused to approach her and ask what the issue was.

    c. Later, between December 2017 and January 2018, while Former Captain Grimes was finally being investigated for his crimes against Ms. Gabbidon and others, Ms. Gabbidon was approached by Officer Evans of FCP Alderson who admitted to Ms. Gabbidon that they had all failed Ms. Gabbidon epically.

39. On or about December 21, 2017, Ms. Gabbidon reported to FPC Alderson staff that she had been the victim of systematic stalking, inappropriate communications, and

nonconsensual sexual intercourse by a FPC Alderson staff member dating back to June 2016.

40. On or about January 12, 2018, Ms. Gabbidon interviewed with SIA regarding her PREA allegations.

41. Between December 21, 2017 and March 8, 2018, therapists in FPC Alderson listed several physical, emotion, and psychological symptoms that Ms. Gabbidon was suffering as a result of the abuses she endured at the hand of FPC staff member, Former Captain Grimes.

42. The reported symptoms recorded include, but are not limited to, (1) having to convince Ms. Gabbidon that she was not to blame for the violent acts committed against her and that she did nothing to deserve such treatment; (2) flashbacks related to specific areas and circumstances; (3) difficulty sleeping; (4) hypervigilance; (5) feelings of shame and guilt; (6) need for unscheduled therapy appointments due to difficulties relating to her experiences as FPC Alderson; (7) difficulty coping with feelings; (8) experiences reminding her of victimization; (9) thoughts of embarrassment; (10) berating herself for not being strong; (11) self-blame for not stopping the perpetrator; (12) becoming tearful and making statements such as "what will it take to heal" and thinking of what she could have done differently; (13) irrational thoughts; (14) significant symptoms of PTSD such as hypervigilance, sleep difficulties, avoidance of stimuli related to the events, intrusive related thoughts, negative moods and cognitions related to the event; (15) several instances of having bags under her eyes; (16) intrusion , including recurrent, involuntary, and intrusive memories of the events as well as marked physiological reactions to cues association with the event; (17) avoiding certain external reminders that are around distressing memories and thoughts; (18) negative alterations in cognitions, including

negative thoughts about herself as well as mood associated with the event, including feelings of shame and guilt; (19) marked alterations in arousal, including sleep disturbance and hypervigilance; (20) meets criteria for Posttraumatic Stress Disorder which she can benefit from routine outpatient mental health care on an ongoing basis; (21) fear that her current stress levels would lead to physical issues which has happened to her in the past; (22) desire to have little to no contact with others; and (23) borderline high blood pressure.

43. As if the brutality she had endured by Former Captain Grimes was not enough, and the guilt and shame that she was experiencing was insufficient, officers of FPC Alderson began approaching Ms. Gabbidon to question and offer unsolicited comments to Ms Gabbidon concerning the allegations. It is important to note that neither the questions nor the comments made were done in furtherance of the investigation against Former Captain Grimes.

    d. On one occasion Lieutenant Workman, of FPC Alderson, approached Ms. Gabbidon and advised her that her failure to report Former Officer Grimes for his assaults was a sign that she was weak.

    e. On another occassion, Ms. Gabbidon was approached by Officer Evans and asked whether Ms. Gabbidon was in fact in love with Former Captain Grimes.

44. During Ms. Gabbidon's therapy sessions, there were a few occasions when the idea of transferring facilities were brought up by the therapist. While on each occasion Ms. Gabbidon ultimately agreed to consider the option or allow herself to be open to considering the option, on her February 22, 2018 session, Ms. Gabbidon broke down in tears and voiced that she had great concerns about transferring because (1) the Bureau of Prisons "shipping people wherever", and (2) she was concerned that the transfer process

itself as she wanted to be able to be furloughed versus being placed around "a lot of men" and removing her hijab.

45. On March 8, 2019, Ms. Gabbidon was advised that she would be transferred to either the facility in Lexington or Marianna. Ms. Gabbidon advised that she preferred Marianna because she had family close by and was concerned that the Lexington facility would not take her concerns into account.

46. FPC Alderson ultimately decided to transfer Ms. Gabbidon to the Lexington facility and rather than alert her to the decision and explain the process for the purposes of addressing her voiced concerns, Ms. Gabbidon was further traumatized when she was suddenly taken to Lexington FMC by Officer Evans and a secretary in the dark of night.

47. Even after leaving FTC Alderson, Ms. Gabbidon continued to experience the symptoms as listed above as well as (1) having flashbacks during the night triggered by hearing officer's keys; (2) not falling asleep until the sun comes up; (3) feelings of uneasiness on the compound given her previous experience and not knowing any of the officers; (4) difficulty with leaving the therapist at FPC Alderson with whom she had developed a trusting relationship and feeling discarded; (5) depression with congruent affect; (6) significant symptoms of PTSD including hypervigilance, sleep difficulties, avoidance of stimuli related to events, intrusive trauma-related thoughts, and negative moods/cognitions related to the event; and (7) inability to sleep until female officers arrive on the day shift.

48. It is important to note that, in addition to Ms. Gabbidon, Former Captain Grimes and several of his colleagues, including Lieutenant Workman, were victimizing several other women during the time that Ms. Gabbidon was being victimized.

## CULTURE OF THE OFFICER-ON-INMATE SEXUAL ABUSE AND GENDER DISCRIMINATION AT FPC ALDERSON

49. The conduct that gave rise to the violations of Plaintiff's rights arose from a pervasive and implicitly condoned culture of sexualized contact with inmates and general workplace sexual harassment.

50. Throughout the two-year nightmare suffered by the Plaintiff, FPC Alderson Officers and Officials, including the individual defendants, were aware of the abusive culture and the repeated allegations of officer-on-inmate sexual assault, and yet failed to take necessary action to investigate, and/or report allegations, discipline responsible parties, or protect inmates.

51. During the events that are the subject of this complaint, Former Captain Grimes was just one of many officers engaged in sexual contact with inmates. The sexual contact behavior was widespread and well known to prisoners, FPC Alderson employees, FCP Wardens and Assistant Wardens, and FPC Alderson supervisors.

52. Former Captain Grimes, and other FPC Alderson employees with duties that involved the care and custody of inmates including the Plaintiff, predatorily arranged to be alone with inmates, frequently arranged for encounters both on and off the prison campus wherein they could take advantage of the inmates, and threatened the inmates with serious repercussions should the inmates report said sexual misconduct.

53. Notably, any report of sexual misconduct between an inmate and FPC Alderson Officer or employee was to be provided to and investigated by none other than Former Captain Grimes himself.

## FPC ALDERSON AND FEDERAL PREA GUIDELINES AND REGULATIONS

54. In 2003, PREA was signed into law by Congress, clearly establishing the Government's policy and intent to eliminate prison rape.

55.  It is the duty of all BOP officials to adhere to PREA.

56. It is well established that victims of "prison rape suffer severe physical and psychological effects that hinder their ability to integrate into the community and maintain stable employment upon their release from prison. They are thus more likely to become homeless and/or require government assistance." PREA, 42 U.S.C. § 15601(11).

57. It was also well-established and well-known to prison administrators at FPC Alderson and throughout the United States that the "high incidence of sexual assault within prisons involves actual and potential violations of the United States Constitution." PREA, 42 U.S.C. § 15601(13).

58. Pursuant to PREA, BOP rules provide for a non-discretionary and non-delegable course of action in the form of clear procedures for all staff at FPC Alderson to follow when dealing with suspected sexual victimization of inmate wards by inmates and staff alike.

59. Pursuant to PREA, BOP rules establishing non-discretionary procedures for prison officials to follow when handling sexual abuse complaints went into effect in late June, 2015 and were firmly established, well-known, and fully in effect at FPC Alderson at all times relevant to this action.

60. Pursuant to PREA, BOP policy requires the training of all employees who may have contact with inmates on its zero-tolerance policy for sexual abuse and sexual harassment.

61. Pursuant to PREA, BOP policy requires the training of all employees who may have contact with inmates on how to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures.

62. The above policies and procedures with respect to prevention, detection, reporting, and response to sexual abuse and sexual harassment were well-known to Former Captain Grimes, just as they were well known to all employees and staff at FPC Alderson.

63. Pursuant to PREA, BOP policy clearly mandates that correctional employees are subject to administrative action for any inappropriate contact, sexual behavior, or relationship with an inmate, regardless of whether such contact constitutes a prosecutable crime.

64. The term "boundary violation" refers to conduct that crosses the line between established norms of professional relationships between BOP staff and their inmate wards.

65. Boundary violations are well-recognized as precursors to sexual activity between prison staff and inmates.

66. The law is well-established that sexual activity between prisoners and correctional officers is wrong.

67. W. Va. Code § 61-8B-10(a) makes such activity – whether or not consensual – a felony in the state of West Virginia.

68. 18 U.S.C. § 2243 (b) also makes such activity – whether or not consensual – illegal.

69. All defendants knew, or should have known, about W. Va. Code § 61-8B-10(a) and 18 U.S.C. § 2243(b).

70. It was Former Captain Grimes' duty – just as it is the duty of all BOP employees and staff at FPC Alderson – to report sexually inappropriate relations and/or suspected incidents of sexual abuse between staff and inmates immediately to the Warden.

71. Former Captain Grimes did not formally report or refer for investigation suspected incidents of sexual abuse between inmates and FPC Alderson employees as it was his duty to do, but instead used his knowledge of same as a means of coercing inmates to participate in ad hoc informal interrogations by him.

72. Pursuant to PREA, BOP policy requires staff to immediately take appropriate steps to safeguard an inmate victim when sexually abusive behaviors have been reported, including reassignment of the alleged perpetrator to another post at the camp, placing the alleged perpetrator on administrative leave, and/or placing the alleged victim in protective custody or transferring them to another federal, state or local facility.

73. Pursuant to PREA, BOP policy required that staff at FPC Alderson protect inmates reporting or cooperating with sexual abuse investigations from retaliation by other inmates or staff.

74. Pursuant to PREA, BOP policy required FPC Alderson to formally designate a staff member responsible for monitoring compliance with the anti-retaliation policy described above.

75. On information and belief, Former Captain Grimes was officially designated as the staff-member responsible for monitoring retaliation against inmates at FPC Alderson, in which capacity he was interviewed in October 2017 by a third-party PREA compliance auditor.

76. Former Captain Grimes indicated that he would "monitor the situation indefinitely" if he suspected that a victim reporting sexual abuse faced retaliation and further reported that there had been no incidents of retaliation in the year preceding the audit.

77. Despite his representations, Former Captain Grimes' conduct toward inmates was retaliatory within the meaning of PREA.

78. Captain Grimes violated 18 U.S.C. § 2244 (a) (4).

## FORMER CAPTAIN GRIMES' PREA VIOLATIONS AS THE OFFICER IN CHARGE OF PREA INVESTIGATIONS AND ENFORCEMENT

79. As stated earlier, Former Captain Grimes was the individual responsible for investigating and enforcing FPC Alderson's Compliance with PREA regulations.

80. On at least one occasion, when another inmate reported another FCP Alderson's PREA violations, Former Captain Grimes responded to said allegations by coercing the inmate into ad hoc informal interrogations which he himself characterized as "damage control" and to "protect one of his Lieutenants" from pervasive rumors of an inappropriate relationship.

81. In addition to his coercive and inappropriate actions, Former Captain Grimes thoroughly failed to comply with any of his PREA responsibilities by failing to formally report or refer for investigation any of the incidents brought to his attention through the prisoners of FCP Alderson.

82. On at least one occasion, Former Captain Grimes actually used his position as the PREA investigator to gain access to a complaining prisoner for the purposes of launching his own slew of sexual assault and PREA violations against her.

83. Despite the reports of PREA violations and his own PREA violations, Former Captain Grimes reported to the BOP when audited that the institution had no reported PREA violations by inmates.

84. In addition to Plaintiff, at least five other inmates were being systematically raped and/or forced to engage in labor work without compensation.

## COUNT I

## EIGHTH AMENDMENT: CRUEL AND UNUSUAL PUNISHMENT

### (*Against Defendant Wilson, Defendant Grimes, Defendant Workman,*

### *Defendant Inch and Defendant Honaker)*

85. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

86. Ms. Gabbidon has a clearly established right under the Eighth Amendment to the United States Constitution not to be subjected to cruel and unusual punishment while incarcerated. Neither Enslavement nor Rape is not recognized as a legitimate form of punishment, it is not an ancillary component of any prison sentence. Rape serves no penological purpose.

87. Former Captain Grimes violated Ms. Gabbidon's rights by repeatedly assaulting and raping her while she was incarcerated at FPC Alderson June 2016 through November 2017.

88. Former Captain Grimes violated Ms. Gabbison's rights by repeatedly forcing her to engage in labor without compensation while she was incarcerated at FPC Alderson June 2016 through November 2017.

89. Former Captain Grimes, individually and/or being aided and facilitated by the policies, practices, acts and omissions of Warden Wilson, Lt. Workman, and Officer Honaker failed in his duty to provide Ms. Gabbidon with constitutionally safe and secure conditions of confinement.

90. Former Captain Grimes' sexual assaults of Ms. Gabbidon amount to inhumane and violent conduct that is outrageous in the extreme.

91. By raping Ms. Gabbidon, Former Captain Grimes acted in bad faith and with gross and wanton negligence in connection with his official duty as a correctional officer at FPC Alderson.

92. On information and belief, Lt. Workman and Officer Honaker were among the officers that were aware of the clear risk that Former Captain Grimes posed to inmates such as Ms. Gabbidon, yet each was deliberately indifferent to the risk faced by Ms. Gabbidon relative to Former Captain Grimes by failing to take such steps as could be reasonably expected to address the danger that he posed.

93. On information and belief, Warden Wilson was aware the FPC Alderson had a long history of sexual assaults predating the first incident against Ms. Gabbidon and took no or inadequate action to investigate or address the institutional deficiencies at FPC Alderson, and thereby was a direct and proximate cause of the violation of Ms. Gabbidon' rights under the United States Constitution.

94. As a direct and proximate result of Former Captain Grimes' sexual assault, Ms. Gabbidon was subjected to unnecessary and wanton pain, and emotional and physical injury, and she is entitled to redress for this serious dignitary injury and violation of her person.

95. The acts, omissions, policies, and practices of Defendants Mark Inch, Warden Wilson, Lt. Workman, and Officer Honaker were intentional, malicious, in bad faith and with gross and wanton negligence, and/or in reckless disregard of Ms. Gabbidon's clearly established constitutional rights.

96. All of Former Captain Grimes', Mark Inch's, Warden Wilson's, Lt. Workman's, and Officer Honaker's acts and omissions were taken while acting under color of state law.

97. As a direct and proximate result of the above described conduct, Ms. Gabbidon suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT II

## EIGHTH AMENDMENT: CRUEL AND UNUSUAL PUNISHMENT INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS *(Against Defendant Grimes)*

98. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

99. Former Captain Grimes acted intentionally, maliciously, and/or in reckless disregard of Ms. Gabbidon's statutory and common law rights, by sexually assaulting and raping her while she was incarcerated at FPC Alderson, despite knowing that severe emotional distress was likely to occur.

100. Former Captain Grimes placed Ms. Gabbidon in a zone of danger from which she could not lawfully escape, causing Ms. Gabbidon to live in fear for her physical safety and the security of her person.

101. Former Captain Grimes' sexual assault of Ms. Gabbidon inflicted physical and dignitary injury to her body, constituting a grave offense to the inviolability of her person.

102. Former Captain Grimes' sexual assault of Ms. Gabbidon subjected her to the well-founded fear that she had been exposed to sexually-transmitted disease pathogens.

103. By sexually assaulting Ms. Gabbidon, Former Captain Grimes acted in bad faith and with wanton disregard amounting to gross negligence in connection with his official duty as a correctional officer at FPC Alderson.

104. As a direct and proximate result of Former Captain Grimes' intentional and negligent infliction of emotional distress, Ms. Gabbidon has been subjected to unnecessary and wanton pain, and emotional and physical injury.

105. Former Captain Grimes' assault caused Ms. Gabbidon to suffer severe emotional distress including but not limited to severe depression, post-traumatic stress injury, and anxiety.

106. As a direct and proximate result of the above described conduct, Ms. Gabbidon also suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT III

## EIGHTH AMENDMENT: FAILURE TO PROTECT

### *(Against Defendant Wilson, Defendant Grimes, Defendant Workman,*

### *Defendant Mark Inch, and Defendant Honaker)*

107.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

108.    Ms. Gabbidon's constitutional right not to be sexually abused or assaulted in prison was firmly established well before the BOP rules establishing mandatory procedures for handling sexual abuse cases to comply with PREA went into effect on June 24, 2015.

109.    PREA mandates, among other things, that informative pamphlets made available to staff and inmates and posters displayed prominently in common areas listing some of the psychological effects of sexual assault and rape on prisoners.

110.    These same pamphlets state "sexual assault in prison is considered cruel and unusual punishment according to the Eighth Amendment to the U.S. Constitution and is a violation of international human rights laws that meets the definition of torture."

111.    Warden Wilson, Lt. Workman and Officer Honaker, failed in their respective duties to provide Ms. Gabbidon with constitutionally safe and secure conditions of confinement through their deliberate indifference to the substantial risk of imminent harm posed by Former Captain Grimes.

112.    The policies, practices, acts, and omissions of Warden Wilson, Lt. Workman, and Officer Honaker directly caused the violation of Ms. Gabbidon's Eighth Amendment right to be free from sexual assault and rape while incarcerated.

113.    Warden Wilson and Mark Inch directly and proximately caused the violation of Ms. Gabbidon's rights under the Eighth Amendment of the United States Constitution by, as one example, failing to train, supervise, and discipline FPC Alderson staff and employees and thereby failing to adequately prevent further constitutional violations.

114. Warden Wilson and Mark Inch directly and proximately caused the violation of Ms. Gabbidon's rights under the Eighth Amendment of the United States Constitution by, as one example, failing to ensure that FPC Alderson staff followed PREA-mandated policy for responding to suspected or known instances of sexual abuse at the institution, thereby failing to adequately prevent further constitutional violations.

115. Warden Wilson and Mark Inch directly and proximately caused the violation of Ms. Gabbidon's rights under the Eighth Amendment of the United States Constitution by, as one example, failing to ensure the coordination of departments within the facility in preventing, detecting, intervening, and responding to sexually abusive behavior.

116. Officer Honaker directly and proximately caused the violation of Ms. Gabbidon's rights under the Eighth Amendment of the United States Constitution by, on information and belief, failing to report or otherwise make reasonable intervention in the face of knowledge of Former Captain Grimes' pattern of sexually abusive behavior towards other inmates.

117. Warden Wilson and Mark Inch directly and proximately caused the violation of Ms. Gabbidon's rights under the Eighth Amendment of the United States Constitution by, as one example, consistently failing to establish and enforce procedures for opposite-sex searches and unit patrols so as to limit the opportunities for FPC Alderson staff to have sexual contact with, or to sexually assault or rape, persons in the custody of the BOP at FPC Alderson.

118. Warden Wilson, Mark Inch, and Lt. Workman directly and proximately caused the violation of Ms. Gabbidon's rights under the Eighth Amendment of the United States Constitution by consistently failing to establish and enforce procedures for investigations of disciplinary infractions so as to limit opportunities for FPC Alderson staff to be alone

with inmates  unsupervised, providing the conditions of opportunity for them to have sexual contact with, or to sexually assault or rape, persons in the custody of the BOP at FPC Alderson.

119. Warden Wilson, Mark Inch, and Lt. Workman directly and proximately caused the violation of Ms. Gabbidon's rights under the Eighth Amendment of the United States by, as one example, tolerating and perpetuating a culture focused on termination or resignation of FPC Alderson staff and employees who sexually abused or sexually assaulted persons in the custody of FPC Alderson, rather than on identifying how and why the assaults and rapes were happening and implementing and enforcing policies, practices and procedures designed to prevent their continued occurrence.

120. Warden Wilson, Mark Inch, and Lt. Workman directly and proximately caused the violation of Ms. Gabbidon's rights under the Eighth Amendment of the United States Constitution by failing to make such further inquiries or interventions as would be reasonable given their knowledge that Former Captain Grimes had been alone for an unknown period of time unsupervised and unobserved in his office with an inmate, thereby placing Ms. Gabbidon in substantial risk of imminent sexual abuse by him.

121. By their acts and omissions, Warden Wilson, Mark Inch, and Lt. Workman placed Ms. Gabbidon in substantial risk of imminent sexual abuse and took no immediate action to protect Ms. Gabbidon from further sexual abuse by Former Captain Grimes, as when, for example, they failed to formally report or make such further inquiries as would be reasonable given their duty to act immediately in mitigating such risk.

122. Lt. Workman engaged in a direct violation of Ms. Gabbidon's constitutional rights by failing to take measures to protect Ms. Gabbidon and all inmates at FPC Alderson in the

face of her actual or constructive knowledge of the risk posed by Former Captain Grimes, thereby subjecting them to substantial risk of imminent sexual abuse.

123. Officer Honaker engaged in a direct violation of Ms. Gabbidon's constitutional rights by failing to take measures to protect Ms. Gabbidon and all inmates at FPC Alderson in the face of her actual or constructive knowledge of the risk posed by Former Captain Grimes, thereby subjecting them to substantial risk of imminent sexual abuse.

124. Warden Wilson, Mark Inch, and Lt. Workman directly and proximately caused the violation of Ms. Gabbidon's rights under the Eighth Amendment of the United States Constitution by, as one example, consistently failing to investigate allegations of sexual assault against correctional officers, by failing to establish investigative procedures designed to reveal the methods, patterns, and practices of FPC Alderson staff and employees who sexually assault and rape persons in the custody of the BOP at FPC Alderson, including but not limited to the failure to investigate allegations of sexual abuse determined to be 'unfounded' because they were not likely to result in a criminal conviction.

125. By the acts and omissions described throughout this complaint, Warden Wilson, Mark Inch, Lt. Workman, and Officer Honaker were deliberately indifferent to Ms. Gabbidon's rights under the Eighth Amendment of the United States Constitution, and this deliberate indifference was a direct and proximate cause of the violation of Ms. Gabbidon's constitutional rights.

126. By May 2017, Lt. Workman was aware of at least one incident involving an inmate who expressed being fearful of Former Captain Grimes. Rather than take steps to further

investigate whether Former Captain Grimes had been engaging in sexually abusive conduct with inmates, Lt. Workman took no or inadequate action.

127. On information and belief, and as a direct result of the above described policies, practices, acts and omissions, correctional officers at FPC Alderson, including the defendant correctional officers, believed that their misconduct would not be investigated or sanctioned but would be tolerated.

128. On information and belief, Officer Honaker was also aware that Former Captain Grimes had been engaging in sexually abusive conduct with a number of inmates predating the first incident of sexual assault perpetrated against Ms. Gabbidon and took no or inadequate action to report same to supervisors at FPC Alderson.

129. As a direct and proximate result of the above described conduct, Ms. Gabbidon suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT IV

## FIFTH AMENDMENT: EQUAL PROTECTION

### *(Against Defendant Wilson, Defendant Grimes, Defendant Workman,*

### *Defendant Mark Inch, and Defendant Honaker)*

130. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

131. Plaintiff is entitled to relief against the individual defendants due the gross failure to protect the female inmates in custody at FPC Alderson by means of a culture, custom, and practice of unequal and discriminatory treatment of women under the supervision of the individual defendants at FPC Alderson.

132. Former Captain Grimes preyed upon Ms. Gabbidon by nature of her gender, and in sexually assaulting Ms. Gabbidon violated her right to be free from unequal and discriminatory treatment.

133. Defendant Wilson, Defendant Mark Inch, Defendant Grimes, Defendant Workman, and Defendant Honaker of FPC Alderson repeatedly ignored sexual harassment and abuse allegations against Former Captain Grimes, scapegoated female inmates for sexual contact, and otherwise subjected Ms. Gabbidon to unequal and discriminatory treatment by nature of her gender.

134. Defendant Wilson, Defendant Grimes, Defendant Mark Inch, Defendant Workman, and Defendant Honaker of FPC Alderson allowed for the housing of female inmates in such numbers and in such dehumanizing conditions, under the direct and unmonitored control

of male officers, such as to create an extreme risk and obvious consequence of widespread sexual harassment and sexual assault of female inmates, including Ms. Gabbidon.

135. Former Captain Grimes' actions and inaction amounted to a systematic failure and led to the ongoing and pervasive sex trafficking of female inmates by guards in and around FPC Alderson.

136. As a direct and proximate result of the above described conduct, Ms. Gabbidon suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT V

## NEGLIGENCE FEDERAL TORT CLAIMS ACT

*(against the United States of America and Federal Bureau of Prisons)*

137. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

138. Defendant United States of America and Defendant Federal Bureau of Prisons, having a legal duty to Ms. Gabbidon as a prisoner in its care and custody, breached that duty in negligently operating and managing FPC Alderson by, *inter alia:*

   a.    Hiring and retaining Former Captain Grimes, and other FPC Alderson

officers, who defendants knew or should have been knew to, to be of such poor moral character, temperament, and disposition as to be totally unfit to be hired and retained as a corrections officer and placed in charge of the Plaintiff.

b.    Failing to adopt, incorporate and enforce such rules, regulations, policies and procedures for the operation and management of FPC Alderson as would reasonably protect Ms. Gabbidon and others detained or incarcerated from unwarranted sexual contact from FPC Alderson employees, including Former Captain Grimes.

c.    Failing to properly supervise, investigate, and review the operation and management of the corrections facility and the activities and performance of Former Captain Grimes and other employees of FPC Alderson.

d.    Permitting a pervasive culture and practice of sexual harassment and officer-on- inmate sexual assault.

e.    Failing to adequately monitor and protect those sexual assault reporting and investigation processes from corruption or divergence into tools for further retaliation against complaining victims.

139.    The aforementioned acts committed against Ms. Gabbidon by Defendant Former Captain Grimes were a direct result of the negligence, carelessness, and recklessness of Defendant United States of America and Defendant Federal Bureau of Prisons, its agents, servants and employees, in failing to meet its duty of care to Plaintiff in its screening, hiring, training, supervising, evaluating and retaining of Defendant Former Captain Grimes.

140. As a result of the aforementioned recklessness, negligence and carelessness of Defendant United States of America, Defendant Federal Bureau of Prisons, and their agents, servants and employees, as aforesaid, Plaintiff suffered and continues to suffer damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT VI

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS FEDERAL TORT CLAIMS ACT

### *(against the United States of America and Federal Bureau of Prisons)*

141. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

142. By the actions described above, defendants engaged in extreme and outrageous conduct and psychologically damaging tactics, which negligently caused severe emotion distress to Plaintiff throughout her incarceration at FPC Alderson and after.

143. Defendants United States of America and Federal Bureau of Prisons failed to adequately protect plaintiff from sexual assault and imposed disciplinary measures against Ms. Gabbidon, a sexual assault victim, known to provoke extreme emotional distress.

144. The acts and conduct of the Defendants were the direct and proximate cause of severe emotional damage to the Ms. Gabbidon and in turn led to psychological and emotional suffering by the Ms. Gabbidon and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of West Virginia.

145. As a result of the foregoing, Ms. Gabbidon was deprived of her liberty and property, and suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT VII

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS FEDERAL TORT CLAIMS ACT

### *(Against Defendant Wilson, Defendant Grimes, Defendant Mark Inch*

### *Defendant Workman, and Defendant Honaker)*

146. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

147. By the actions described above, defendants engaged in extreme and outrageous conduct and psychologically damaging tactics, which negligently caused severe emotion distress to Plaintiff throughout her incarceration at FPC Alderson and after.

148. Defendants failed to adequately protect plaintiff from sexual assault and imposed disciplinary measures against Ms. Gabbidon, a sexual assault victim, known to provoke extreme emotional distress.

149. The acts and conduct of the Defendants were the direct and proximate cause of severe emotional damage to the Ms. Gabbidon and in turn led to psychological and emotional suffering by the Ms. Gabbidon and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of West Virginia.

150. As a result of the foregoing, Ms. Gabbidon was deprived of her liberty and property, and suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT VIII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FEDERAL TORT CLAIMS ACT

### *(against the United States of America and Federal Bureau of Prisons)*

151. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

152. By the actions described above, Defendants intentionally engaged in extreme and outrageous conduct and psychologically damaging tactics, which caused severe emotion

distress to Ms. Gabbidon throughout her incarceration at FPC Alderson and after.

153.    Defendants United States of America and Federal Bureau of Prisons intentionally failed to adequately protect plaintiff from sexual assault and imposed disciplinary measures against Ms. Gabbidon, a sexual assault victim, known to provoke extreme emotional distress.

154.    The acts and conduct of the defendants were the direct and proximate cause of severe emotional damage to Ms. Gabbidon and in tum led to psychological and emotional suffering by Ms. Gabbidon and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

155.    As a result of the foregoing, Ms. Gabbidon was deprived of her liberty and property, and suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT IX

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## FEDERAL TORT CLAIMS ACT

### *(Against Defendant Wilson, Defendant Grimes, Defendant Mark Inch*

### *Defendant Workman, and Defendant Honaker)*

156.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as

if fully set forth herein.

157. By the actions described above, Defendants intentionally engaged in extreme and outrageous conduct and psychologically damaging tactics, which caused severe emotion distress to Ms. Gabbidon throughout her incarceration at FPC Alderson and after.

158. Defendants intentionally failed to adequately protect plaintiff from sexual assault and imposed disciplinary measures against Ms. Gabbidon, a sexual assault victim, known to provoke extreme emotional distress.

159. The acts and conduct of the defendants were the direct and proximate cause of severe emotional damage to Ms. Gabbidon and in tum led to psychological and emotional suffering by Ms. Gabbidon and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

160. As a result of the foregoing, Ms. Gabbidon was deprived of her liberty and property, and suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT X

## ASSAULT

## FEDERAL TORT CLAIMS ACT

*(against the United States of America and Federal Bureau of Prisons)*

161. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

162. Plaintiff is entitled to relief against all Defendants because Former Captain Grimes sexually assaulted her under the color of law and as an agent, servant and employee of Defendant United States of America and Defendant Federal Bureau of Prisons, acting within the course and scope of his employment, and under the supervision of FPC Alderson.

163. Former Captain Grimes subjected Ms. Gabbidon to sexual assault, and Defendants actions collectively subjected Ms. Gabbidon to the ongoing apprehension of imminent harm, and such acts were wrongful as a tort under the laws of the United States and without justification under any applicable federal statute or rule, nor under the Constitution of the United States.

150. As a result of the foregoing, Ms. Gabbidon was deprived of her liberty and property, and suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT XI

## ASSAULT

### *(Against Defendant Grimes)*

164. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

165. Plaintiff is entitled to relief against Defendant Former Captain Grimes because he sexually assaulted her.

166. Former Captain Grimes subjected Ms. Gabbidon to sexual assault and to the ongoing apprehension of imminent harm, and such acts were wrongful as a tort under the laws of the United States and without justification under any applicable federal statute or rule, nor under the Constitution of the United States.

150. As a result of the foregoing, Ms. Gabbidon was deprived of her liberty and property, and suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT XII

## BATTERY

## FEDERAL TORT CLAIMS ACT

*(against the United States of America and the Federal Bureau of Prisons)*

167. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

168. Plaintiff if entitled to relief against all Defendants because Former Captain Grimes sexually battered her under the color of law and as an agent, servant, and employee of Defendant United States of America and Defendant Bureau of Prisons, acting within the course and scope of his employment, and under the supervision of FPC Alderson.

169. Former Captain Grimes subjected Ms. Gabbidon to nonconsensual sexual contact, against her will and without her freely-given consent, and such acts were wrongful as a tort under the laws of the United States and without justification under any applicable federal statute or rule, nor under the Constitution of the United States.

170. As a result of the foregoing, Ms. Gabbidon was deprived of her liberty and property, and suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## COUNT XIII

## BATTERY

## FEDERAL TORT CLAIMS ACT

### *(against Defendant Grimes)*

171. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

172.    Plaintiff if entitled to relief against all Defendant Former Captain Grimes because he sexually battered her.

173.    Former Captain Grimes subjected Ms. Gabbidon to nonconsensual sexual contact, against her will and without her freely-given consent, and such acts were wrongful as a tort under the laws of the United States and without justification under any applicable federal statute or rule, nor under the Constitution of the United States.

174.    As a result of the foregoing, Ms. Gabbidon was deprived of her liberty and property, and suffered damages including excruciating emotional pain, psychological injury, embarrassment, humiliation, fear, loss of enjoyment of life, lost liberty, extreme emotional and mental distress, loss of future consortium, mental anguish, vaginal discharge attributed to consistent rape, night terrors, sleep deprivation, severe PTSD, increased cardiac problems requiring medicine and treatment, increased blood pressure, significant future medical and mental health expenses, loss of earning capacity due to mental state requiring regular therapy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Honorable Court grant her the following relief:

A.  Assume jurisdiction over this matter;

B.  Award compensatory damages to Plaintiff;

C.  Award punitive damages to Plaintiff;

D.  Convene and empanel a jury to consider the merits of this claim;

E.  Award Plaintiff reasonable costs and interest;  and

F.  Grant any other relief that the Court may deem appropriate and equitable.

Respectfully Submitted,

s/ Laura M. Finch
Laura M. Finch, WVSB #12094
*Counsel for Plaintiff*
820 Tenth Ave.
Marlinton, WV  24954
(304) 799-7388