IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

PAULETTE GABBIDON,

    Plaintiff,

v.                                    CIVIL ACTION NO. 1:19-00828

DAVID R. WILSON, et al.,

    Defendants.


## MEMORANDUM OPINION AND ORDER

In this case, plaintiff alleges that while she was incarcerated in federal prison, a captain at the prison sexually assaulted her on numerous occasions and forced her to do personal labor for him.  The United States has moved to dismiss[1] this case on grounds that because plaintiff missed the six-month window in which to file suit after the agency's mailing of its rejection letter, her claim is "forever barred." (ECF No. 34.) 28 U.S.C. § 2401(b).  Plaintiff opposes the motion.[2]  For the reasons that follow, the motion is **DENIED**.

---

[1] The United States has moved for summary judgment in the alternative.

[2] Plaintiff moved to exceed the page limitation on response memoranda. (ECF No. 45.)  For good cause shown, her motion is **GRANTED**.

## I.   **Background**

Plaintiff was incarcerated at FPC Alderson ("Alderson") in West Virginia from 2015 to 2018.  She alleges that she was the victim of sexual assault and enslavement at the hands of a prison official, former Captain Jerrod Grimes ("Grimes"), and that other prison officials breached their duty to intervene or report Grimes's abuse.  Specifically, she alleges that from 2016 to 2017 Grimes raped her on numerous occasions and forced her to clean his home and the homes of other prison officials without compensation.  She alleges a "culture of sexual abuse" (ECF No. 6, at 1-2) that rose to the level of "sex trafficking within FPC Alderson" (id.) and that involved at least five other victims. She also alleges that Grimes is a "convicted serial rapist." (Id. at 3.)

In December 2017, a chaplain at Alderson urged plaintiff to get an attorney, which she did.  On May 2, 2018, her attorney attempted to file a claim under the Federal Tort Claims Act ("FTCA") with the Bureau of Prisons ("BOP").  BOP rejected the claim as insufficient for failure to specify the dates of the injuries.  She then submitted a new claim, which the Consolidated Legal Center at Beckley, West Virginia, received on September 26, 2018.[3]

---

[3] The claim, however, is dated July 25, 2018.

BOP rejected this claim by letter dated January 28, 2019.
After preliminary settlement discussions, plaintiff's counsel
orally requested that BOP reconsider the claim with a new demand
amount.  A dispute later arose as to whether BOP had represented
that it would issue a new denial letter.  When BOP refused to
provide a new denial letter, plaintiff submitted another claim
on November 1, 2019.  Shortly thereafter, BOP rejected the claim
as duplicative and as not filed in the right location.  On
November 21, 2019, plaintiff filed this action.

## II.  Standards

### a. Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) asks whether
a court has the ability to hear and adjudicate the claims
brought before it.  Federal courts are courts of limited
jurisdiction and can act only in those specific instances
authorized by Congress.  See Bowman v. White, 388 F.2d 756, 760
(4th Cir. 1968).  The plaintiff bears the burden of proving the
existence of subject matter jurisdiction.  See Evans v. B.F.
Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).  Further, a
party who brings an action against the United States pursuant to
the FTCA "bears the burden of pointing to . . . an unequivocal
waiver of immunity." Williams v. United States, 50 F.3d 299,
304 (4th Cir. 1995) (quoting Holloman v. Watt, 708 F.2d 1399,
1401 (9th Cir. 1983)).

Some Rule 12(b)(1) challenges require the court to assume the complaint's allegations are true, while other Rule 12(b)(1) challenges allow the court to evaluate the evidence supporting the complaint's allegations.  See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  As the Fourth Circuit has explained:

> There are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction.  First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.  In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.  Second, it may be contended that the jurisdictional allegations of the complaint were not true.  A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.

Id.; see also Williams, 50 F.3d at 304 (citing 2A James W. Moore, Moore's Federal Practice ¶ 12.07 at 12-49-12-50 (2d ed. 1994)) (stating that in deciding Rule 12(b)(1) motions, courts may "consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning jurisdiction."); S.R.P. v. United States, 676 F.3d 329, 332 (3d. Cir. 2012) ("Because the Government's motion presented a factual challenge to subject matter jurisdiction, the District Court was not confined to the allegations in [the] complaint, and was entitled to

independently evaluate the evidence to resolve disputes over jurisdictional facts.").

### b. Rule 12(b)(6)

"The purpose of a Rule 12(b)(6) motion is to test the [legal] sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999) (citations and internal quotation marks omitted).  A Rule 12(b)(6) defense asserts that even if all the factual allegations in a complaint are true, they remain insufficient to establish a cause of action.  This court is also mindful that "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." Jones v. Bock, 549 U.S. 199, 215 (2007).

Related to this, Federal Rule of Civil Procedure 8(a)(2) requires that "a pleading . . . contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 677—78 (2009) (citing Fed. R. Civ. P. 8(a)(2)).  The purpose of Rule 8(a)(2) is to ensure that "the defendant [receives] fair notice of what the . . . claim is and the grounds upon which it rests."  Conley

v. Gibson, 355 U.S. 41, 47 (1957).  A plaintiff must allege
"'enough facts to state a claim to relief that is plausible on
its face'" and "'raise a right to relief above the speculative
level.'"  Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599,
615 n.26 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly,
550 U.S. 544, 555 (2007)).

The United States Supreme Court has maintained that
"[w]hile a complaint . . . does not need detailed factual
allegations, . . . a plaintiff's obligation to provide the
grounds of his entitle[ment] to relief requires more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  Twombly, 550 U.S. at 555
(citations and internal quotation marks omitted).  The court
need not "accept as true unwarranted inferences, unreasonable
conclusions, or arguments."  E. Shore Mkts., Inc. v. J.D.
Assocs. Ltd P'ship, 213 F.3d 175, 180 (4th Cir. 2000).  Courts
must also take care to avoid confusing the veracity or even
accuracy underlying the allegations that a plaintiff has leveled
against a defendant with the allegations' likelihood of success.
While "the pleading must contain something more . . . than . . .
a statement of facts that merely creates a suspicion [of] a
legally cognizable right of action," 5 C. Wright & A. Miller,
Federal Practice and Procedure § 1216, pp 235-36 (3d ed. 2004),
"assum[ing]" of course "that all the allegations in the

complaint are true (even if doubtful in fact)," Twombly, 550
U.S. at 555, it is also the case that "Rule 12(b)(6) does not
countenance . . . dismissals based on a judge's disbelief of a
complaint's factual allegations." Neitzke v. Williams, 490 U.S.
319, 327 (1989).  Therefore, courts must allow a well-pleaded
complaint to proceed even if it is obvious "that a recovery is
very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236
(1974).

### c. Summary Judgment

Rule 12(d) of the Federal Rules of Civil Procedure requires
the court to treat a motion to dismiss under Rule 12(b)(6) as
one for summary judgment when matters outside the pleadings are
presented to and not excluded by the court.  "'Federal courts
have complete discretion' in determining whether to exclude
material beyond the pleadings or to convert a motion to dismiss
into a motion for summary judgment." Vail v. City of New York,
68 F. Supp. 3d 412, 420 (S.D.N.Y. 2014) (quoting Kouakou v.
Fideliscare N. Y., 920 F. Supp. 2d 391, 396 (S.D.N.Y. 2012)).

A motion for summary judgment will be granted only if there
exists no genuine issue as to any material fact and the movant
is entitled to judgment as a matter of law.  See Fed. R. Civ. P.
56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250
(1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If
there clearly exist factual issues "that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment for the movant is unavailable.  Anderson, 477 U.S. at 250; see also Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987); Morrison v. Nissan Motor Co., 601 F.2d 139, 141 (4th Cir. 1987).  The movant bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Catawba Indian Tribe of South Carolina v. South Carolina, 978 F.2d 1334, 1339 (4th Cir. 1992), cert. denied, 507 U.S. 972 (1993).

When adjudicating a summary judgment motion, the district court must construe the facts alleged in the light most favorable to the party opposing the motion.  See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Gill v. Rollins Protective Servs. Co., 773 F.2d 592, 595 (4th Cir. 1985).  Furthermore, "[a] party who bears the burden of proof on a particular claim must factually support each element of his or her claim."  Weakland v. United States, 2005 WL 300084, at *3 (D. Md. Feb. 8, 2005).  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  Celotex Corp., 477 U.S. at 323. Therefore, with respect to the issues on which the nonmovant bears the burden of proof, it remains the nonmovant's

"responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial."  Weakland, 2005 WL 300084, at *3; see also Anderson, 477 U.S. at 256; Celotex Corp., 477 U.S. at 324.

That said, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  Detrick v. Panalpina, Inc., 108 F.3d 529, 536 (4th Cir. 1997), cert. denied, 522 U.S. 810 (1997).  The United States Supreme Court has asserted that there must exist "sufficient evidence favoring the [nonmovant] for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249-50 (citations omitted).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. (citations omitted).

## III. **Analysis**

Under 28 U.S.C. § 2401(b),

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

Defendant bases its motion on plaintiff's alleged non-compliance with the six-month timing requirement.  A motion to dismiss under 12(b)(1) is improper because "the FTCA's time bars are

nonjurisdictional." See United States v. Kwai Fun Wong, 575
U.S. 402, 420 (2015). Accordingly, defendant's motion under
Rule 12(b)(1) is **DENIED**. Defendant submitted a declaration with
several attachments thereto in support of its motion. Plaintiff
submitted documents and declarations in response. Therefore,
the court will treat defendant's 12(b)(6) motion as a motion for
summary judgment.

Defendant says that plaintiff's case is time-barred under
the FTCA because plaintiff missed the six-month window in which
to file suit after BOP's rejection of her FTCA administrative
claim. Although plaintiff filed this case within six months of
the rejection of her November 1, 2019 claim, defendant says that
the November 1 claim is not operative for purposes of the six-
month deadline because it was duplicative of one filed nine
months earlier. Defendant also says that this is not one of the
rare situations calling for equitable tolling to extend the six-
month deadline.

Plaintiff responds with alternative arguments. First, she
says that her November 1, 2019 claim was not duplicative;
therefore, the filing of this case on November 21, 2019, was
timely. Second, she says that this is one of the extraordinary
cases in which equitable tolling is appropriate. Her
extraordinary circumstances narrative culminates with a U.S.
Immigration and Customs ("ICE") agent instructing her to put her

civil case on hold, which she "frantically" and immediately asked her attorney to do.  (See ECF No. 42, at 11.)

### a. The November 1, 2019[4] Claim Was Partially Duplicative

Because the May 15, 2018 and September 26, 2018 claims[5] provided sufficient presentment of the injuries alleged in the November 1, 2019 claim, the November 1 claim was duplicative; as such, and because it came more than six months after BOP's rejection, it did not reopen the six-month window of time for the filing of a complaint.

A duplicative injury claim presented to a federal agency more than six months after the original claim is a nullity for purposes of the six-month rule.  See Roman-Cancel v. United States, 613 F.3d 37, 42-44 (1st Cir. 2010).  A claim is

---

[4] The operative time for a claim is when it is received, but because defendant does not state when this claim was received (unlike the other claims), and because the dates on the "RECEIVED" stamps are illegible, the court will refer to this claim with this date, which is the way the parties refer to it and is the date on what appears to be the cover letter for the claim.  In any event, the exact date of this claim is not at issue.

[5] Although BOP rejected the May 15, 2018 claim as incomplete for failure to specify the dates of the alleged injuries, under Fourth Circuit precedent, discussed below, this claim would likely amount to sufficient presentment.  Plaintiff was not required to use the Standard Form 95, nor was she necessarily required to specify dates as long as she provided the agency with sufficient information to investigate.  The May 15 claim specified that she was injured while she was incarcerated at FPC Alderson, and she was incarcerated there for only a few years.  Given the facts of this case, it is highly unlikely that BOP needed specific dates in order to investigate the allegations in the claim.

duplicative when it is the "functional equivalent" of the
original claim.  See id. at 42.  "There is scant case law
evaluating whether a successive administrative claim is the
functional equivalent of the first." Spinazzola v. United
States, No. 19-CV-165-GKF-FHM, 2019 WL 6050723, at *5 (N.D.
Okla. Nov. 15, 2019).  In Spinazzola, the court decided whether
a claim was duplicative by reference to the law of presentment
sufficiency.  Id. at *5-6.  Presentment is the process of
submitting a claim as required under § 2401 and is a
jurisdictional prerequisite.  See Ahmed v. United States, 30
F.3d 514, 516 (4th Cir. 1994).  Unless a claim has been
sufficiently presented to the appropriate administrative agency,
a federal court has no jurisdiction over a case based upon such
a claim.  Id. at 518.  Stated differently, presentment is
necessary to exhaust a claimant's administrative remedies, and
failure to exhaust those remedies requires dismissal.  See
Thaxton-Tensley v. United States, No. GJH-19-1019, 2020 WL
2794594, at *4 (D. Md. May 29, 2020).

The plaintiff in Spinazzola filed a claim alleging medical
negligence and then (over a year later) filed a second claim
alleging negligent hiring and supervision, all relating to the
same injury.  2019 WL 6050723, at *3.  The court determined that
because the first claim did not adequately put the government on
notice about the negligent hiring and supervision claims, the

12

first claim was not duplicative of those claims and did not
stand in their way.  See id. at *6.  The court rejected the
government's argument that claims being "factually related" or
"intertwined" was enough to make the claims functionally
equivalent.  See id.  The court did not require that the second
claims be "unrelated" to be non-duplicative.  See id.

    The parties appear to agree that if the November 1, 2019
claim was duplicative of the earlier one, then it does not reset
the six-month clock.  They also appear to agree that a
duplicative claim may be described as one that is the
"functional equivalent" of a former claim.  But that is where
the agreement ends.  The parties advance different general
definitions of what it means for a claim to be the functional
equivalent of another one, and disagree on whether the November
1, 2019 claim was the functional equivalent of the earlier ones.
Neither party offers a definition of a duplicative claim
anchored on binding case law.

    Defendant's definition of a duplicative claim is
essentially any claim filed after the first one unless there are
intervening developments in the facts of the claim.  Defendant
appears to draw on the law of claim preclusion to suggest that
claimants must get it right the first time around or forfeit
whatever portions of their claim they may have omitted that are

based on the same set of facts.  The statute does not require such a strict reading.

Plaintiff, however, goes too far the other way.  Under her definition, any claim that sufficiently elaborates on the original claim is enough to reset the clock not only for the "new" injuries, but for <u>all</u> injuries.  Such a system would make it too easy to revive an expired claim, rendering the six-month rule a nullity, and defeating its purpose, which is to protect the government from stale claims by "requir[ing] the reasonably diligent presentation of tort claims against the government." <u>See</u> <u>Plaza Speedway Inc. v. United States</u>, 311 F.3d 1262, 1266 (10th Cir. 2002); <u>see also</u> <u>Dunn v. U.S. Dep't of Veterans Affairs</u>, No. 3:18CV699, 2020 WL 4720044, at *4 (E.D. Va. Aug. 13, 2020) (quoting <u>Order of R.R. Telegraphers v. Ry. Express Agency</u>, 321 U.S. 342, 348–49 (1944)) ("Statutes of limitations 'are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'").

In applying § 2401(b), the goal is to use an "approach [that] holds the balance steady and true between an FTCA plaintiff's right to redress and the government's legitimate interest in defeating stale claims."  <u>Cf.</u> <u>Donahue v. United States</u>, 634 F.3d 615, 624 (1st Cir. 2011).  In the absence of

binding authority describing when an FTCA claim is duplicative, the Spinazzola court's analysis is a good model for achieving such balance.  Accordingly, if plaintiff's original claim sufficiently presented the injuries described in the second claim, then the second claim is duplicative.  The question, then, is whether the first claim amounted to sufficient presentment.

While Spinazzola provides the analytical framework, this court applies the presentment law of the Fourth Circuit to that framework.  Presentment of an FTCA claim in this circuit requires (1) notice sufficient "to enable the agency to investigate" and (2) a demand for a sum certain.  See Ahmed, 30 F.3d at 516–17.  Only the first prong of this test is at issue here, which the Fourth Circuit has not had occasion to discuss at length.  In Spinazzola, the court applied Eleventh Circuit law, which had similarly described sufficient presentment as consisting of "(1) a written statement describing the injury in sufficient detail to allow the agency to begin an investigation into the possibility of potentially tortious conduct, and (2) a request for a sum certain in damages."  Lopez v. United States, 823 F.3d 970, 976 (10th Cir. 2016).  "[T]he 'claim' asserted 'encompasses any cause of action fairly implicit in the facts.'" Id. (quoting Murrey v. United States, 73 F.3d 1448, 1452 (7th Cir. 1996)).

The claimant in <u>Lopez</u> filed a claim describing medical malpractice and later sued for medical malpractice.  823 F.3d at 972-73.  He then sought and was granted leave to amend his complaint and add a claim for negligent credentialing and privileging.  <u>Id.</u> at 973.  In concluding that the district court erred in granting leave to add this claim because it was not sufficiently presented (and therefore the district court lacked jurisdiction), the court explained,

> Nothing in Lopez's administrative claim provided the government with notice that it needed to investigate whether the VA Hospital was negligent in credentialing and privileging [Dr.] Kindt, and it was in turn deprived of any opportunity to settle this potential claim without litigation.  Consequently, we conclude that Lopez's administrative claim did not reasonably encompass his negligent credentialing and privileging claim.

<u>Id.</u> at 977.  The court further explained that "nothing in Lopez's administrative claim would have caused the government to investigate whether Kindt was properly credentialed."  <u>Id.</u> Accordingly, the government was denied "an opportunity to investigate, and a chance to settle the claim prior to litigation."  <u>Id.</u>

Here, plaintiff's May 2, 2018 letter to the BOP stated that, "[w]hile housed at the federal prison camp in Alderson, West Virginia," prison employees "repeatedly raped, tortured, harassed, discriminated against [her] due to her religion, and terrorized" her.  (ECF No. 34-1, at 17.)  She also alleged

negligence on the part of BOP employees for allowing this to happen to her.  The BOP denied this claim as insufficient for failure to specify the dates of the alleged events.  She then submitted a Form 95 alleging as follows:

> Jerrod Grimes, a correctional officer and captain with the Federal Bureau of Prisons (BOP), while on duty and acting in the course of his employment supervising inmates and superior for fellow correctional officers, staff, and medical personnel, throughout 2016 and 2017, repeatedly raped, tortured, harassed, and discriminated against Paulette Gabbidon, in part, but not exclusively, on the basis of her religion while Ms. Gabbidon was housed as a federal inmate at the Federal Prison Camp Alderson. (See attached additional pages.)

Id. at 24.  The facts alleged here were more concrete because they identified the perpetrator of the alleged injuries, but also narrower in that there is no explicit allegation that other BOP officials failed to protect her.[6]  These allegations, as succinct as they may be, presented the government with sufficient information to investigate most of the claims in plaintiff's first amended complaint.  In the simple allegation that a prison official raped an inmate, a litany of causes of action are fairly implicit, and especially considering that there was a related criminal investigation, BOP cannot reasonably claim that it did not have enough information to give

---

[6] Despite the reference to "attached additional pages," no additional pages are provided in either plaintiff's or defendant's exhibits, so at least for purposes of this motion, the court will assume that they do not exist.

it an opportunity to settle this matter without litigation.  The
Fourth Circuit has not adopted an interpretation of the
presentment requirement that requires drawing fine distinctions
as to what is a fair inference and what is not, so neither will
this court.  As another court in this circuit has described the
presentment rule, "Put simply, notice is sufficient if it
enables the agency to investigate the claim."  Weston v. United
States, No. 1:15CV84, 2015 WL 5511133, at *5 (M.D.N.C. Sept. 17,
2015).  BOP had sufficient information to investigate the claims
that do not relate to forced labor, so those claims were
adequately presented.  Therefore, plaintiff's November 1, 2019
claim was duplicative as to those claims, and it did not reset
the clock as to those claims.  As to the claims involving forced
labor, the November 1, 2019 claim was not duplicative, and
plaintiff timely filed suit on them after the government denied
the November 1, 2019 claim.

### b. Equitable Tolling is Appropriate

"The FTCA six-month limitations period is a non-
jurisdictional, claim processing rule subject to equitable
tolling."  Ramirez v. United States, 410 F. Supp. 3d 824, 832
(S.D. Tex. 2019) (citing U.S. v. Kwai Fun Wong, 575 U.S. 402,
135 S. Ct. 1625, 1633 (2015)).  Recently, the Fourth Circuit
provided a thoughtful discussion of the "'subtle and difficult'
differences between the various equitable doctrines that

potentially afford plaintiffs relief from a limitations period."
Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 548 (4th Cir. 2019)
(quoting Klehr v. A.O. Smith Corp., 521 U.S. 179, 192)).  These
doctrines are (1) fraudulent concealment, (2) equitable
estoppel, and (3) equitable tolling.  Id. at 549.  The first two
involve misconduct by the party invoking the statute of
limitations, while the third does not necessarily involve such
misconduct.  See id. at 549.  Only the second two – equitable
estoppel and equitable tolling – are at issue here.

     "Equitable estoppel applies where . . . the defendant
engages in intentional misconduct to cause the plaintiff to miss
the filing deadline."  English v. Pabst Brewing Co., 828 F.2d
1047, 1049 (4th Cir. 1987).  The key distinction between
equitable estoppel and fraudulent concealment is that "[t]he
plaintiff's failure to timely file his claim derives not from
his ignorance of the cause of action, but rather from conduct
taken by the defendant to induce the plaintiff not to timely
file his claim."  Edmonson, 922 F.3d at 549.

     As for equitable tolling, there are two elements:  (1)
diligent pursuit of the claim and (2) "extraordinary
circumstances" impeding the claimant's timely filing the claim.
Menominee Indian Tribe of Wisconsin v. United States, 136 S. Ct.
750, 755 (2016) (quoting Holland v. Florida, 560 U.S. 631, 649
(2010)).  "The doctrine of equitable tolling is to be applied

'sparingly.'"  Dunn, 2020 WL 4720044, at *4 (citing Irwin v.
Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).  It should
be applied only to avoid an unconscionable application of a
statute of limitations that would result in gross injustice.
See Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000).
The extraordinary circumstances necessary to invoke equitable
tolling must be "beyond the control of" and "external to" the
conduct of the party invoking the doctrine.  Id.  Equitable
tolling does not apply to "garden variety claim[s] of excusable
neglect."  See Irwin, 498 U.S. at 96.  "Equitable tolling does
not require any misconduct on the part of the defendant."  Casey
v. United States, 161 F. Supp. 2d 86, 95 (D. Conn. 2001) (citing
Canales v. Sullivan, 936 F.2d 755, 758 (2d Cir. 1991)).  The
Fourth Circuit has explained that equitable tolling "does not
lend itself to bight-line rules," id., and that courts should
decide whether it applies on a "case-by-case basis."  Nguyen v.
Inova Alexandria Hosp., No. 98-cv-2215, 1999 WL 556446, at *3
(4th Cir. July 30, 1999).

     The Fourth Circuit has held that equitable tolling would be
appropriate if a plaintiff could prove that "the defendants
confiscated her passport, isolated her from other people,
monitored her communications, and threatened that she would be
imprisoned and deported if she tried to escape."  Cruz v. Maypa,

773 F.3d 138, 146 (4th Cir. 2014).[7]  In the same case, the court extended its holding in Vance v. Whirlpool Corp., 716 F.2d 1010 (4th Cir.1983), to hold that the failure to post a notice of worker's rights under the Fair Labor Standards Act constituted extraordinary circumstances that would make equitable tolling appropriate.  Id. at 146-47.

In Casey, the Veteran's Administration's failure to provide the plaintiff with an SF 95 form, in breach of a regulation requiring it to do so, was grounds for equitable tolling.  161 F. Supp. 2d at 95-96.

Though only persuasive authority, a case from the Southern District of New York also involving the prison context is highly instructive.  There, a prisoner at Sing Sing Correctional Facility alleged that prison officials mistreated him, including by filing false misbehavior reports against him, for which he was punished with loss of privileges, loss of good time, and placement in the special housing unit for 30 months. Davis v. Jackson, No. 15-CV-5359 (KMK), 2016 WL 5720811, at *1-2 (S.D.N.Y. Sept. 30, 2016).  The defendants argued that the plaintiff's claims were time-barred.  See id. at *5.  The

---

[7] Although the court used the term "equitable tolling," because this case was pre-Edmonson, and because the court was working from a framework that collapsed the equitable tolling and equitable estoppel analyses, it is not entirely clear whether the court's holding is that these acts would call for equitable tolling, equitable estoppel, or both.

plaintiff argued that equitable tolling should apply because
fear of retaliation prevented the timely filing of his claims.
See id. at *8.  After a thorough analysis, the court found that
the plaintiff had alleged facts that, if proven, would be
sufficient grounds for equitable tolling.  Id. at *8-12.  In its
analysis, the court noted that (1) equitable tolling is
available only in "rare and exceptional circumstances"; (2) the
case law suggesting that fear of retaliation is not grounds for
equitable tolling dealt with "the Title VII employment or the
ADA context," where, unlike "in the context of an inmate's
§ 1983 suit," fear of retaliation should generally increase
claimants' incentives to sue "by giving [them] a second claim"
to litigate; (3) "[g]eneralized allegations of fear of
retaliation" (as opposed to "specific facts") are insufficient;
and (4) "fear of retaliation is, at least as a theoretical
matter, an impediment that is within a plaintiff's control."
Id.  In holding that equitable tolling nonetheless ought to
apply, the court explained that inmate-plaintiffs are "situated
much differently" from other plaintiffs because of the level of
control exercised over prisoners lives and the psychological
consequences that are likely to go along with that level of
control.  See id. at 10.  The court explained further:

> Given this unique context and the substantial control
> that correction officers exert over inmates, the
> specter of retaliation, a real and ever-present force

> in an inmate's life, can reasonably be said to be
> outside of an inmate-plaintiff's control.  Thus, the
> Court concludes that in the prison context, reasonable
> fear of retaliation may be sufficient to constitute
> extraordinary circumstances warranting equitable
> tolling, particularly if the person threatening
> retaliation is a defendant <u>or another official who
> could be or was influenced by a defendant</u>.

<u>Id.</u> at *11 (emphasis added).  The specific facts that the

plaintiff alleged, including threats by officers not to pursue

grievances,[8] amounted to extraordinary circumstances meriting

equitable tolling.  <u>Id.</u>

     Here, plaintiff alleges facts (and provides evidence to

support those facts) that touch upon elements of both equitable

estoppel and equitable tolling because the extraordinary

circumstances were due, at least in part, to the actions of

defendant and a government official.  Less than six months after

BOP denied her claim, her attorney, Ms. Feller, engaged in

settlement discussions and orally asked BOP to reconsider the

claim with a revised demand amount.  The BOP attorney, Ms. Lee,

said that she would get back to Ms. Feller.  Ms. Lee later

rejected the revised demand amount and, in response to Ms.

Feller's request, said that a letter would be issued to that

effect.  While Ms. Feller's request for reconsideration did not

---

[8] The plaintiff alleged that officers told him, "I hope your
[sic] not gonna write me up for this because I know about you,"
"[Do not] be writing a bunch of shit up around here," and "[Y]ou
know weapons can be found in your cell."  <u>Id.</u>

have the effect of tolling the six-month window because it was
not in writing,[9] Ms. Lee's statement that a written rejection
would be forthcoming may have induced plaintiff to delay filing
a complaint.

Further, Grimes threatened plaintiff in an effort to ensure
her silence, which included gathering data on her family and
stating that he could affect her immigration status.  Although
those threats ultimately did not stop plaintiff from hiring an
attorney, that does not mean the threats did not continue to
affect her.

Plaintiff's assistance in the criminal case against Grimes
and her pursuit of her own civil case coincided with a transfer
to FMC Lexington much earlier than expected, with her legal mail
being lost, and with a flurry of what would appear to be unusual
activity in regards to plaintiff's immigration status.
Plaintiff was also designated a "behind the fence" prisoner.
When the Southern District of New York commuted plaintiff's
sentence and she was about to be released, a prison official
called ICE and demanded that she be picked up before she was
released.  She was then transferred to another institution.

---

[9] Prior to the commencement of suit and prior to the expiration
of the 6-month period provided in 28 U.S.C. 2401(b), a claimant,
his duly authorized agent, or legal representative, may file a
written request with the agency for reconsideration of a final
denial of a claim under paragraph (a) of this section.  28
C.F.R. § 14.9 (emphasis added).

While there, the ICE agent assigned to her case, Agent Young, warned plaintiff to stop pursuing her civil case immediately. Specifically, he told plaintiff that she "needed to call [her] attorney right away and tell her to stop whatever it is that she's filing." (ECF No. 42, Ex. F, at 11.) He told plaintiff to do this "because they [were] watching [her] and call every day." (Id.) Plaintiff immediately did as instructed. She called Ms. Feller and told her to stop all work on the case until plaintiff's immigration issues were no longer pending.[10]

In what at first appears to be a similar case from the Northern District of Indiana, the court found the plaintiff's fear over the potential effect that his pursuit of an FTCA claim may have on his immigration proceedings was insufficient to merit equitable tolling. See Mufti v. Lynch, 190 F. Supp. 3d 827, 832 (N.D. Ind. 2016). But there are key differences distinguishing that case from this one. First, the court there appeared to rely heavily on the plaintiff's inability to satisfy the first prong of equitable tolling (diligent pursuit of the claim). Second, the plaintiff there was not incarcerated,

---

[10] Plaintiff alleges, and provides evidence to support, other facts that bolster her argument for equitable estoppel or equitable tolling, but the court omits them from this opinion because it finds these facts sufficient.

which, for the well-articulated reasons in <u>Davis</u> (discussed above), makes a big difference.[11]

### IV.  <u>Conclusion</u>

Plaintiff presents two arguments in response defendant's motion.  The first argument – that the November 1, 2019 claim was not duplicative – saves only some of plaintiff's claims: specifically, those related to forced labor.  This is because the earlier claims did not adequately present the facts forming the basis for plaintiff's forced-labor claims to the government.

The second argument – that plaintiff is entitled to equitable relief from the six-month rule – saves all of plaintiff's claims, at least at this juncture.  If defendant proves at trial that the facts upon which plaintiff bases her argument (such as that an ICE agent told her to stop pursuing her case) are not true, then the six-month rule may bar the claims that plaintiff's first argument fails to save:  all those related to the alleged sexual abuse.

---

[11] The court also finds persuasive the D.C. Circuit's skepticism toward the idea that fear of retaliation is insufficient to justify equitable relief from a statute of limitations as a matter of law.  <u>See</u> <u>Chung v. U.S. Dep't of Justice</u>, 333 F.3d 273, 279 (D.C. Cir. 2003).  There, the court held that an objectively reasonable fear that a lawsuit would jeopardize a request for leniency would merit equitable tolling.  <u>Id.</u>

For the reasons expressed above, defendant's motion to dismiss or, alternatively, for summary judgment (ECF No. 34) is **DENIED.**

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED** this 17th day of February, 2021.

ENTER:

David A. Faber
Senior United States District Judge

27